# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JESSICA M. RICHARDS,                   :

     Plaintiff,                        :

          Case No. 3:14cv00094

 vs.                                    :

          District Judge Walter Herbert Rice

CAROLYN W. COLVIN,                     :   Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the
Social Security Administration,        :

     Defendant.                        :

## REPORT AND RECOMMENDATIONS[1]

## I.    <u>Introduction</u>

Plaintiff Jessica M. Richards has applied for Supplemental Security Income three times; each time the Social Security Administration denied her application.  She brings this case is before the Court challenging the denial of her most recent application in April 2013. She contends that Administrative Law Judge (ALJ) Amelia G. Lombardo's evaluation of the medical records and opinions was flawed in several respects and that the ALJ has repeatedly failed to address the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles.

Plaintiff asserts here, as she did before the Social Security Administration, that she is

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

under a benefits-qualifying disability due to her mental-work limitations caused by, for example, affective and personality disorders.[2]

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #12), the administrative record (Doc. #7), and the record as a whole.

Plaintiff presently contends that ALJ Lombardo erred by failing to properly evaluate the treating and other medical source opinions, by failing to properly evaluate material medical evidence, and by repeatedly failing to address the conflict between vocational expert testimony and the Dictionary of Occupational Titles.  The Commissioner disagrees, arguing that the ALJ reasonably weighed the medical opinions in the record and reasonably relied on the vocational expert's testimony.

## II.    <u>Additional Background</u>

Plaintiff was 33 years old on September 17, 2010, the date she most recently filed for Supplemental Security Income.  She was consequently in the category of a "younger person" for the purpose of resolving her application.  20 C.F.R. §416.963(c).

During 4th grade in elementary school, Plaintiff began attending learning disability classes.  She continued in school until completing 10th grade.  (Doc. #7 at 985).  She has custody of her son.  Her past jobs were mostly in the fast-food industry.  Her earnings were minimal because her jobs were short-term, the longest lasting 4 months.  *Id*. at 265, 269-73,

---

[2] The ALJ made certain findings regarding Plaintiff's physical impairments.  In this case, Plaintiff does not challenge the ALJ's decision regarding her physical impairments.

2

581.

Plaintiff's impairments include, in part, an affective disorder, a personality disorder, borderline intellectual functioning, and lumbar degenerative disc disease. She has a history of cervical cancer, stomach problems, ovarian cysts, and chronic gallbladder problems. (Doc. #7, PageID at 57).

Plaintiff's met with her treating psychiatrist Dr. Yakhmi at various times from May 18, 2009 to February 27, 2012. In February 2010, Dr. Yakhmi answered written questions, diagnosing Plaintiff with bipolar disorder and indicating she was "emotionally not able to hold [a] job." *Id*. at 458. Dr. Yakhmi further noted Plaintiff was "irritable [and] labile ...." *Id*. In August 2010, Dr. Yakhmi noted that Plaintiff's mood was stable. On November 2010, Dr. Yakhmi noted Plaintiff's mood had become "labile" with no further details about her mood. *Id*. at 813. The ALJ declined to apply controlling or significant weight to Dr. Yakhmi's opinions. *Id*. at 62.

Psychologist Dr. Tangeman is a non-treating, non-examining medical source. He reviewed the record and completed a report in March 2010, in connection with Plaintiff's second application for benefits. *Id*. at 461-78. Dr. Tangeman rejected Dr. Yakhmi's conclusion that Plaintiff was not emotionally able to hold a job. The ALJ placed "significant weight" on Dr. Tangeman's opinion and accepted nearly all the limitations on Plaintiffs' mental work abilities Dr. Tangeman set. *Id*. at 63, 463.

Psychologist Dr. Schulz is a non-treating, examining medical source. In connection

3

with Plaintiff's first application for benefits, Dr. Schultz examined her in July 2008. He opined that she was moderately impaired in three areas of her mental work abilities, and mildly impaired in the fourth area. (Doc. #7 at 395-406). More recently, Dr. Schulz examined Plaintiff in January 2011. He diagnosed her with dissociative disorder NOS, depressive disorder NOS, and anxiety disorder NOS.[3] He opined that Plaintiff was markedly impaired in her mental ability to relate to others, including co-workers and supervisors, and to withstand the stress and pressures of day-to-day work activity. Dr. Schulz further concluded that Plaintiff was mildly impaired in her remaining two areas of mental work abilities. *Id.* at 579-86. The ALJ placed "little weight" on Dr. Schulz's assessments. *Id*. at 58, 61.

The administrative record contains treatment records and check-marked answers to a December 2012 questionnaire from Mental Health Services of Clark County, Ohio. *Id*. at 742-76, 835-43, 869-72. The ALJ gave "little weight" to the questionnaire's answers. *Id*. at 62.

Lastly, to be clear about Plaintiff's disability onset date, she filed her third application for benefits on September 17, 2010. This date is considered her claimed disability onset date for determining eligibility for Supplemental Security Income. *See* Social Sec. Ruling 83-20, 1983 WL 31249 at Intro. ("Under title XVI, there is no retroactivity of payment.

_____

[3] NOS refers to a diagnosis "not otherwise specified" in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders.

Supplemental security income (SSI) payments are prorated for the first month for which

eligibility is established after application and after a period of ineligibility.").  As a result, the

ultimate issue before ALJ Lombardo was whether Plaintiff was under a disability beginning

on or near September 17, 2010.  *Id*., 1983 WL 31249 at \*7.

### III.    ALJ Lombardo's Decision

The Social Security Administration provides Supplemental Security Income to

indigent individuals, subject to several eligibility requirements.  Chief among these is the

"disability" requirement embodied in the definition of a "disabled individual."  42 U.S.C.

§1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase "disabled

individual" – as defined by the Social Security Act – encompasses only those who have a

medically determinable physical or mental impairment that is severe enough to prevent them

from doing paid meaningful work (statutorily speaking, "substantial gainful activity").  42

U.S.C. §1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a disability, and thus eligible for SSI, ALJ

Lombardo applied five-Step sequential evaluation set forth in the Regulations.  20 C.F.R.

§416.920(a)(4).  At the initial Steps, ALJ Lombardo concluded that Plaintiff (1) had not

engaged in substantial gainful activity; (2) has the severe impairments of affective disorder,

borderline intellectual functioning, lumbar degenerative disc disease, the residual effects of

hernia surgery, and chronic obstructive pulmonary disease; and (3) did not meet or equal the

criteria of an impairment in the Listings.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1; *see*

5

*also* Doc #7 at 54-58.[4]

At Step four of the sequential evaluation, ALJ Lombardo recognized that Plaintiff's "physical condition had worsened since the last decision ...."[5]  *Id*. at 63.  The ALJ then found Plaintiff physically able to perform light work.  Yet, she remains "restricted to work that involves simple repetitive tasks and work that is low stress which is defined for [her] as meaning no assembly-line production quotas, no fast-paced work, and no contact with the general public," according to the ALJ.  (Doc. #7 at 58).  This constituted, according to the ALJ, Plaintiff's "residual functional capacity" or the most she could do, considering her existing physical and mental limitations.  *See* 20 C.F.R. § 416.945(a); *see also* Social Security Ruling 96–8p, 1996WL 374184.

These and the ALJ's other findings led her to ultimately conclude that Plaintiff was not under a "disability" and was not, therefore, eligible for benefits.

## IV.   **Judicial Review**

The Social Security Administration's determination of disability – typically embodied in the ALJ's written decision – is subject to judicial review along two lines: whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings.  *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v.*

---

[4] To avoid unnecessary repetition, the remaining citations to the administrative record will refer to the PageID numbers without restating "PageID."

[5] ALJ Lombardo was referring to ALJ Shell's non-disability decision in October 2008.  ALJ Shell found Plaintiff able to perform work at any level of exertion with only non-exertional limitations to "simple tasks involving one or two steps and low-stress duties ...."  (Doc. #7 at 123).

*Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, substantial evidence supports the ALJ's factual findings when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

**V.** **Discussion**

   **A.** **Medical Source Opinions**

A treating medical source's opinion is given controlling weight under the treating-physician rule when it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Gayheart v. Comm'r Social Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *see* 20 C.F.R. §404.1527(c)(2) (eff. April 1, 2012); Social Security Ruling 96-2P, 1996 WL 374188 at *1 (July 2, 1996). "If the Commissioner does not

give a treating-source opinion controlling weight, then the opinion is weighed based on the

length, frequency, nature, and extent of the treatment relationship, as well as the treating

source's area of specialty and the degree to which the opinion is consistent with the record as

a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (citation

omitted).  The ALJ must set forth "good reasons" for the weight given to a treating source's

opinions.  20 C.F.R. §404.1527(c)(2); *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004).

Unlike treating physicians, "opinions from nontreating and nonexamining sources are

never assessed for 'controlling weight.'  The Commissioner instead weighs these opinions

based on the examining relationship (or lack thereof), specialization, consistency, and

supportability, but only if a treating-source opinion is not deemed controlling.  Other facts

'which tend to support or contradict the opinion' may be considered in assessing any type of

medical opinion." *Gayheart*, 710 F.3d at 376 (citation omitted).

### B.  <u>Opinions from Prior Record</u>

Plaintiff contends that the ALJ erred by relying solely on the March 2010 opinions of

record-reviewing psychologist Dr. Tangeman.  Plaintiff emphasizes that Dr. Tangeman

evaluated the medical evidence during the time of her second application for benefits and

"was not privy to any medical evidence in relation to the current claim.  None.  Absolutely

none."  (Doc. #8 at 990).

The Commissioner relies on the Sixth Circuit's statement in an unpublished case,

*Helm v. Comm'r of Social Sec.*, 405 Fed Appx. 997 (6th Cir. 2011), and maintains, "[t]here is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record.  The opinions need only be "supported by evidence in the case record.'"  *Id*. at 1002 (quoting in part, Social Sec. Ruling 96-6p, 1996 WL 374180, at *2 (1996)).  Care must be taken here.  It is easy to conceive of a case where an ALJ and the Commissioner might err by using *Helm* to simply overlook or ignore mounds of medical evidence and opinions favorable to a claimant that post-date a non-treater's opinions.  Such an analytical approach would be antithetical to the Regulations.  The "consistency" factor in the Regulations states, "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."  20 C.F.R. §416.927(c)(4) (emphasis).  The "supportability" factor promises:

> The better an explanation a source provides for an opinion, the more weight we will give that opinion.  Furthermore, because nonexamining sources have no examining or treating relationship with [the claimant], the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions.  We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

20 C.F.R. §416.927(c)(3) (emphasis added).  In this manner, these regulatory factors tether the weight due a medical source's opinion to whether it is consistent with and supported by evidence in the record that both pre-dates and post-dates the source's opinion.  *Helm*, therefore, should not be read too broadly:  Although it recognizes that a non-treater's opinion might remain valid despite his or her view of an incomplete or less-detailed record, it does

9

not permit an ALJ to ignore or overlook significant later-born evidence that is contrary to or fails to support the non-treater's opinions.  *See* 20 C.F.R. §§416.927(c)(3), (4); *cf. Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("a substantiality of evidence evaluation does not permit a selective reading of the record. 'Substantiality of the evidence must be based upon the record taken as a whole.  Substantial evidence is not simply some evidence, or even a great deal of evidence.  Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *quoting, in part, Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)).

In the present case, however, even assuming – in Plaintiff's favor – that the ALJ erred by crediting Dr. Tangeman's 2010 opinions, such error was harmless because the evidence in the record after Dr. Tangeman's opinions was so patently deficient that the Commissioner could not possibly credit it.  *See Wilson v. Comm'r of Social Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).  As will be discussed below, *infra*, §V(C), the treating-source opinions by Dr. Yakhmi were wholly conclusory, and the ALJ properly discounted both the records and questionnaire from Clark County Mental Health Services and Dr. Schultz' opinions.

Plaintiff also argues that the ALJ failed to comply with HALLEX I-2-1-13(B)(2), which provides, in part:

> An ALJ will generally find that evidence in prior claim(s) file is necessary for a full adjudication of issues when the ALJ determines: ... The impairment is of a nature that evidence from a prior folder could make a difference in establishing whether disability is present in the current claim.

*Id*.  The plain meaning of this language did not impose a mandatory procedural requirement

on the ALJ. The phrases "will generally find ..." and "necessary for a full adjudication ..."

invoke a permissive rather than a mandatory requirement. This permissiveness in confirmed

when this section of the HALLEX is read in the context of its subtitle: "Considering

Evidence In Prior Claim(s) May Be <u>Necessary</u>." *Id.* (emphasis added). The HALLEX also

distinguishes this permissive language from the mandatory language it employs to identify

situations when "Evidence in Prior Claim(s) File is <u>Required</u>." HALLEX I-2-1-13(B)(1).

Plaintiff's memo, moreover, does not cite a case supporting her position that the ALJ erred

by not obtaining the prior record under HALLEX I-2-1-13(B)(2). *Cf. Bowie v. Comm'r of*

*Soc. Sec*., 539 F.3d 395, 399 (6th Cir. 2008) (mentioning that HALLEX provides guidance

Social Security staff and adjudicators and is "not binding on this court."); *cf. also Parra v.*

*Astrue*, 481 F.3d 742, 749 (9th Cir. 2007) ("internal agency documents such as [HALLEX]

do not carry the force of law and are not binding upon the agency. Therefore, they do not

create judicially enforceable duties, and we will not review allegations of noncompliance

with their provisions.") (internal citations omitted).

### C. Dr. Yakhmi, Dr. Schultz, and Mental Health Services Records

Plaintiff contends, "ALJ Lombardo improperly gave little weight to the opinions from

Mental Health Services, and consultative examiner Dr. Schultz, as well as failing to identify

exactly what weight was given to treating source Dr. Yakhmi's opinion. In addition, ALJ

Lombardo did not provide good reasons as to why she rejected the treating source opinions."

(Doc. #8 at 992). Plaintiffs' contentions lack merit.

11

In February 2010, treating psychiatrist Dr. Yakhmi diagnosed Plaintiff with bipolar disorder and opined that she was "not emotionally able to hold [a] job."  (Doc. #7 at 457-58).  The ALJ reasonably rejected this opinion because it was conclusory and because a treating medical source's diagnosis is not by itself determinative of the ultimate disability determination.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("[C]onclusory statements from physicians are properly discounted by ALJs."); *see also Simons v. Barnhart*, 114 Fed. Appx. 727, 733-34 (6th Cir. 2004); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.).

In August 2011, Dr. Yakhmi completed a two-page mental-functional-capacity form.  Doing so, he checked boxes indicating that Plaintiff was "moderately" limited in six areas.  She was, for example, moderately limited in her ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; and to sustain ordinary routine without supervision.  *Id*. at 640.  Under the rating categories set forth in the form, a "moderate" limitation is less severe than a person with a "marked" or "extreme" limitation.  Dr. Yakhmi's did not assess Plaintiff as markedly or extremely limited in any area.  He instead concluded that Plaintiff was "not significantly" limited in the majority of work areas listed on the form.  *Id*.  Dr. Yakhmi also checked boxes indicating that Plaintiff was unemployable for 12 months or more.  *Id*. at 641.  Substantial evidence supports the ALJ's

12

decision to reject Dr. Yakhmi's opinions.  He did not provide any significant explanation for his opinions and did not tie his opinions to medical evidence of record.  It appears that Dr. Yakhmi might have written his diagnosis in these notes, although his handwritten words are not plainly legible.  (Doc. #7 at 461).  Assuming the notes document Dr. Yakhmi's diagnosis, without some meaningful explanation in support or reference to supporting medical evidence, the ALJ reasonably rejected Dr. Yakmi's opinions.  *See id*. at 461-62.

In addition, the ALJ reasonably rejected Dr. Yakhm's opinions because his opinions were inconsistent with his treatment notes that, in the ALJ's words, "generally indicate a stable mood with no significant mental health symptoms."  *Id*. at 62.  A review of Dr. Yakhmi's notes confirms the ALJ's opinion, although Dr. Yakhmi's handwritten notes are difficult to read.  It appears that he noted on many days that Plaintiff's mood was "stable." *See, e.g., id*. at 816.  There is a possibility that Dr. Yakhmi's handwritten notes say that Plaintiff's mood was "labile" rather than stable, *see, e.g., id*. at 815-17, this does not help assist Plaintiff in showing the ALJ erred.  Assuming Dr. Yakhmi found Plaintiff's mood to be labile, his treatment notes and opinions fail to provide further information or details about the severity of her lability or the frequency of fluctuations in her mood.  Dr. Yakhmi's additional notes contain only minimal information about her fluctuations in mood.  His notes on one treatment session describe Plaintiff's mood was "good," *id*. at 809; on another her mood was "irritable," *id*. at 812; and other notes are not reasonably decipherable, *id*. at 810-19.  Without more specific information about the severity of Plaintiff's symptoms, Dr.

13

Yakhmi's notes and opinions do not lead to the reasonable conclusion that Plaintiff was under a benefits-qualifying disability due to her labile moods.  *See White*, 572 F.3d at 286; *see also Simons,* 114 Fed. Appx. at 733-34; *Higgs*, 880 F.2d at 863.

Plaintiff next argues that the ALJ erred by not giving more weight to the mental health questionnaire and associated mental health treatment notes from Mental Health Services of Clark County in 2011 and 2012.  The Mental Health Services questionnaire from December 2012 noted that Plaintiff had marked difficulties in social interaction, moderate and marked limitations in sustained concentration and persistence, and moderate to marked limitations in adaptation.  (Doc. #7, Page ID at 870-72).  The ALJ reasonably gave this questionnaire "little" weight as it was inconsistent with the evidence of record.  *Id*. at 62.  Mental Health Services records from April 2012 through August 2012 revealed that Plaintiff had almost all "unremarkable" mental-examination findings for each visit.  *Id*., Page ID at 836-37, 839, 841-43.  One exception to this occurred on June 12, 2012 when Plaintiff's counselor checked boxes indicating that Plaintiff's mood and affect were "remarkable."  The counselor further indicated that Plaintiff was "stressed," and her affect was "concerned."  *Id*. at 840.  Yet, without more specificity, these notes fail to support the limitations and opinions set forth in the unexplained questionnaire.  The few remaining additional notes indicating that Plaintiff was, at times, irritable or angry are likewise too general to support the unexplained opinions in the questionnaire.  Even if such general notes are accepted as substantial evidence favoring Plaintiff, such evidence fails to negate the other substantial evidence supporting the ALJ's

14

reasonable decision to give little weight to the questionnaire.  *See Her*, 203 F.3d at 389-90 ("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.").

Plaintiff further argues that the questionnaire is supported by the consultative examinations and opinions of psychologist Dr. Schultz.  Dr. Schulz's opinion was partially consistent with the Mental Health Services questionnaire in the sense that he believed Plaintiff had impairments in her ability to withstand stress and in her ability to relate to others.  (Doc. #7 at 395-402, 579-86).  However, the ALJ reasonably gave this opinion little weight as Dr. Schultz relied on not credible statements by Plaintiff concerning her blackouts. Plaintiff's statements about her blackouts were not substantiated anywhere else in the record – including in her mental health treatment notes.  The ALJ also recognized that Dr. Schulz relied on the fact that Plaintiff's boyfriend described her blackouts.  Yet, as the ALJ correctly recognized, Plaintiff's boyfriend was "hardly an impartial observer."  *Id*. at 61.  This conclusion is reasonably supported by the fact that Plaintiff's boyfriend is her "sole means of financial support ...."  *Id*.  Because neither the Mental Health Services questionnaire nor Dr. Schulz's 2011 opinions were supported by the evidence in the record, the ALJ reasonably gave them little weight.

Accordingly, for all the above reasons, Plaintiff's challenges to the ALJ's evaluation of the medical evidence and opinions of record lack merit.

### D.   <u>Vocational Expert's Opinions</u>

Relying on Social Security Ruling 00-4p, Plaintiff contends that the ALJ erred by failing to obtain a reasonable explanation from the vocational expert for any conflicts between the vocational expert's testimony and information in the Dictionary of Occupational Titles (DOT).  Plaintiff's argument, however, runs headlong into *Lindsley v. Commr of Social Sec.*, 560 F.3d 562 (6th Cir. 2009).  The Court of Appeals held in *Lindsley* that the ALJ did not run afoul of Ruling 00-4p because the vocational expert credibly testified that there was no conflict between his opinions and the DOT, and Lindsley's counsel did not cross-examine the vocational expert on this point even though the ALJ afforded him a full and fair opportunity to do so.  *Id*. at 606.

And so it is in the instant case.  ALJ Lombardo asked the vocational expert if her testimony was consistent with the DOT.  The vocational expert answered affirmatively.  (Doc. #7 at 105).  The ALJ then provided Plaintiff's attorney with a full and fair opportunity to cross-examine the vocational expert, but the topic of possible inconsistencies did not arise.  *Id*. at 105-08.  When presented with these same circumstances in *Lindsey*, the Court of Appeals held, "The ALJ had no duty under S.S.R. 00-4p to interrogate him further."  560 F.3d at 606 (citation omitted).

Plaintiff also points to the fact that the DOT number cited by the vocational expert for the job of dishwasher was incorrect.  However, any such error was harmless in this case as the vocational expert also identified multiple alternative jobs associated with correct DOT

numbers that Plaintiff could perform (housekeeper, 302.685-010; stock handler, 209.587-034; janitor, 381-687-018; stock handler, 222.684-010, and kitchen helper, 318.687-010).  (Doc. #7 at 104-06). *See Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

Accordingly, the ALJ reasonably relied on the vocational expert's testimony to determine that Plaintiff could perform a significant number of jobs in the national economy.

## IT THEREFORE IS RECOMMENDED THAT:

1. The Commissioner's final non-disability decision be affirmed; and

2. The case be terminated on the docket of this Court.

January 9, 2015

                s/Sharon L. Ovington
                   Sharon L. Ovington
           Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).

18